2010-15-02 Mr. Haddon, when you're ready. The jury in this case did a remarkable job and got it absolutely right. CORDANCE asserted three patents, each of which had the same long, very detailed technical specifications. But your issue on appeal is Claims Seven and Eight of the 710 patent, right? Yes, your Honor. And you say that those claims were invalid, that the jury could find that those claims were invalid. Yes, your Honor. Okay. Could you address particularly anticipation? Are you arguing that the jury had to find anticipation? No, your Honor. I think the jury, in fact, found that there was lack of any description as well as anticipation. If the question is what the jury had to find to support the verdict. The verdict doesn't tell us what the ground of the verdict was. That's correct, your Honor. There were three arguments that were made, anticipation, derivation, and written description, right? Correct. So we don't know what the jury found. We do to some degree, your Honor, just because Claim Two was found invalid by the jury. And there was no, we did not present an anticipation argument with respect to Claim Two. That's the claim that is dependent from Claim One. I think there's a similar one for Claim Seven, Claim Nine, that requires storing customer information as an object, which is not something that Amazon does now or did in the prior art. Amazon was found not to infringe that claim, but the jury found it invalid nonetheless. So I think that's evidence that the jury at least found that the claims were invalid for lack of written description. So we can't uphold it on grounds of anticipation? Oh, we can as well, your Honor. I'm just saying if you're trying to understand what the jury decided, I think it had to be You seem to be saying the jury didn't rely on anticipation because it found these other didn't rely, these other claims didn't have an anticipation issue with respect to them. With respect to Claim Two, there was no anticipation issue. So with respect to Claim Two, the jury found that lack of written description was sufficient to find a claim invalid. I don't see what these other, the findings with respect to these other claims have to do with Claim Seven and Eight. Just stick with Claim Seven and Eight. So with respect to Claim Seven and Eight, there were three arguments that were made. We don't know what the jury found, right? Correct. So isn't the problem that where you submit a case to the jury on three separate theories, that if any one of those theories is defective, then you have to have a new trial, right? I don't believe so, your Honor. I think if any, if there's sufficient evidence to support any of those theories, the jury verdict stands. But we don't know what theory the jury might have relied on. Other than the discussion we just had with respect to Claim Two, you're right, your Honor. But doesn't that mean you have to have a new trial unless all three theories are defective? I don't believe so, your Honor. For example, in the Verizon case, there was an issue about a claim construction with respect to a particular element. If there's evidence supporting other grounds for finding non-infringement, the court said, that's fine. We don't need to go back and have another trial. Are you saying that's the nature of a jury verdict? Yes. On a general verdict? Yes. There's a lot of law on this which you don't brief. You know, there are cases all over the circuits that suggest that, and it's not, there seems to be some conflict in the circuits, but in general, the rule is, and we look at Third Circuit law here, the general rule is that if there's a general verdict and it was submitted on multiple theories, if one of the theories was defective, then you have to have a new trial. As you say, I think there's cases that go both ways on that, your Honor. I do think, however, that there was more than sufficient evidence to find anticipation of Well, but that doesn't get you home free if the other two theories may have been wrong. Well, as we say in our briefs, and as I will present now, I believe that all three theories were correct and supported by substantial evidence. In other words, the patent was invalid for lack of written description of the automatically completing the transaction, and also invalid over the earlier Amazon cut. Absolutely, your Honor. So there's no description in the patent as we lay out in detail, and as our expert explained at trial, of the automatically completing step. There's no description of using this identifying information to look up stored customer information and processing it to complete a transaction from a seller with no human input. Now, the trial court, the judge overrode the jury based on the testimony of a Dr. Alvisi? Dr. Alvisi was Amazon's expert in the case, and the trial judge found that his testimony was not sufficient for two reasons, and we think both of them are erroneous. The first reason was that his testimony focused largely on the payment partner server section of the patent, which is the only part of the patent the court has pointed to at trial for support for the automatically completing a purchase step of the claim that Dr. Alvisi said was not there. And at closing argument, the court came back and pointed the jury to exactly the same portion of the specification that Dr. Alvisi addressed and said, look for yourself and you'll find it there. Dr. Alvisi explained in detail why it wasn't there. So we believe that in the court, in this missing document. You're saying that was substantial evidence? That was substantial evidence, as is the specification itself. As your honor knows, the University of Rochester, the patent itself is substantial evidence of its own invalidity if it doesn't include the written description support. What about anticipation? Sure. If I understand correctly, there are two arguments as to why this 1995 cart wasn't anticipatory. Put aside the question of the priority date. Sure. So let's assume that the 1995 cart is prior art. So they're suggesting that the 1995 cart doesn't anticipate because it's basically a basket thing where you add to the basket and then ultimately you have a submit button or something like that. And they're also saying, if I understand correctly, that there are steps that occur after the submit button is pushed. And so there has to be credit card verification and things like that later. Absolutely, your honor. So if I could just explain. Claim seven, if your honor remembers, is not the claim that even Cordon's is asserting requires this one-click purchasing that Amazon has and patented itself. Claim seven requires receiving a message to complete a purchase transaction. And in the accused system, in the current accused system, Cordon's points to a button that is pushed during the checkout process in the Amazon shopping cart. So there's no distinction in the claim between what was accused as the message to complete a transaction in the current system and the final confirm your purchase button in the prior art 1995. In other words, you view the claims here as not directed to a one-click. Absolutely. And claim seven in particular is specifically not, even according to Cordon's. There's nothing one-click in claim seven. It's an indication to complete a purchase. And they're accusing a step in Amazon's own current shopping cart, this one-click from your cart. You've already put items in your cart, you're ready to check out, and you can do it more quickly by hitting this one button than normally hitting two buttons, whatever the normal step is. But there's nothing in the claim, and there's certainly nothing in the court's construction of a message to complete a transaction that requires one-click purchasing. So there's no distinction there that they can make between the prior art 1995 cart and what they currently accuse. So that's the one piece. And Dr. Avici explained this in his testimony in detail. The second piece is this human input as far as processing the credit card. And the undisputed evidence at trial was that the same level of human input is required in the accused system. So Amazon does not process your credit card transaction today until your product is loaded on a truck. The truck leaves the warehouse, and a person, a dockmaster standing at the warehouse, hits a button on the wall that causes a message to be sent to the software that says, okay, now we will process your credit card transaction. So to the extent there was human input in the prior system, which there was, at some point at the end of the day someone moved a disk from one computer to another in order to validate or charge the credit cards, there was human input in the current system. So the jury must have found, in finding that Amazon infringes, that the transaction is complete before that, before the credit card is charged. And that's the position courts, of course, took, because they know that there's human input in the current Amazon system to charge a credit card. So what their expert said was, the transaction is complete when Amazon sends you a message saying thank you for your order. And the undisputed evidence at trial was that the same thank you for your order message was automatically sent in 1995. So there's no way that they can distinguish their theory of infringement against Amazon's current card against what was done in 1995. And there was substantial evidence showing just that, provided by Dr. Lorenzo, or Dr. Albisi. You're into your rebuttal time, which you can continue to use or save? I'll address any questions, otherwise I'll save it. Fine. Thank you. Mr. Albert? Thank you, Your Honors, and may it please the court. Time permitting, I'll address written description, anticipation, and briefly, derivation. So why doesn't, assuming that we put aside the priority date issue and that the 1995 card is prior, why doesn't that anticipate? Yes, Your Honor, there are two reasons. There are two limitations that are missing. And let me start with the fact, and this is a rather unusual case in this respect, that Amazon's own expert admitted at trial twice that he did not believe that the 1995 card anticipates. I'm not aware of any case in which anticipation has been found where the defendant's expert has made that concession. Well, that's disputed. But just to talk about the evidence of the 1995 card, why doesn't the 1995 card anticipate? Yes, Your Honor. So there are two missing. Because I understand that you argued that you could have a credit card verification process after the Submit button, right? Right. The first step that's missing from the 1995 card is the automatic completion, which the court construed as lack of any human involvement. Now, the difference between the 1995 card system and the current system is that currently the entire credit card verification process is automated. In the 1995 card system, it was a very rudimentary system. People had to walk disks back and forth from one computer to another in order to implement that process. And the critical distinction is that that's not when the credit card was charged. That credit card verification process, which Dr. Albisi admitted at A9547, used human involvement. It was not automatic. That entire process came before completion, before completion of a purchase transaction. In the current system, the entire process through completion is automated. Okay. So how do we know what the meaning of the word automated is in the claim here and that doesn't permit manual credit card verification later? Yes, Your Honor. And the answer to that is the term automated was actually construed by the court, without objection, as without human involvement. That comes from Column 67. But we don't know what, without human involvement, at what stage is the question. How do we know, reading this specification, that you can't have human involvement after the Submit button is clicked? How do we know that you can't have manual credit card verification later? And this is, it comes back to Amazon's own expert, Dr. Albisi, actually conceded the point. He said, from Mr. Davis, that's Amazon's technical witness, I learned that there was human involvement. Now he's talking about human involvement that occurred prior to completion. But I asked you about the specification. What is it in the specification that says automatically means that you can't have any manual credit card activity afterwards? The specification doesn't answer Your Honor's question head on, I don't believe. I think, though, that taken together with the court's construction, what the specification does say and what the claim does require is completion, automatic completion of a purchase transaction without human involvement. Well, I guess that's unclear as to whether that means completion from the point of view of the purchaser doesn't have to do anything more, or completion that some third party doesn't have to do anything more. It's ambiguous in that respect. So, to the extent that there is any ambiguity, and I believe the record and the testimony reflects that completion was the end of the purchase transaction process. But if there is any remaining ambiguity, the burden fell on Amazon to articulate to the And they chose not to do that. Dr. Alvisi, their own witness. I don't think this is an infringement question. It's really a claim construction question as to what the meaning of automatically is. Whether automatically means no further steps by the purchaser or no further steps by third parties. How do we know what the answer is? Automatic was construed, completion was not. And that's correct, Your Honor. And that left Amazon bearing the burden of establishing to the jury through evidence, through testimony of some kind, that the completion had happened. And Dr. Alvisi simply didn't do that, as the court correctly found. He never put before them testimony about that. There's a second piece, if I may, about the anticipation case that hasn't been addressed here so far. And that is that there is a requirement for metadata in Claim 7. It's different than the requirement in Claim 1, but there's also a metadata requirement. Dr. Alvisi never testified that there was the necessary metadata in Claim 7. And so for that reason as well, this was the second element that was missing from the anticipation case. Mr. Alvis, we had a little glitch with the time clock. So what you're reading now is an incorrect time. OK. So I'll sort of try to be fair and give you your full 15 minutes. Thank you, Your Honor. So there were two missing limitations. We addressed the two. But there was a further problem with anticipation, as the court correctly held. And that is that Dr. Alvisi never linked or mapped the claim elements of the 95 cart to any of the claims, but certainly not to Claim 7. Claim 7, of course, as the court has observed, is the claim that we're talking about here today. Dr. Alvisi's testimony was about Claim 1. The entirety of Dr. Alvisi's testimony on anticipation with regard to Claim 7 and 8 is quoted in full on page 44 of our red brief. It's entirely conclusory. It's entirely the type of testimony that this court held in Cytologics and Coedo is insufficient, and that the court below found to be insufficient. Yeah, but the problem is that we're just looking at the claims here. What happens in the accused method, or whatever it is, is pretty clear. There isn't any real factual dispute about it. The question is, what do the claims mean? And if we say automatically complete means the purchaser is done with it, that solves one problem. And if on the other hand we say initiate means the final step, then there's anticipation, right? That might be true with regard to Claim 1. We don't agree that that's the correct conclusion, but there was testimony about Claim 1. There was not testimony. On Claim 7, he was asked one question, and this was the entirety of the evidence that they put before this jury. He was asked whether an analysis of the 1995 cart would meet the limitations of Claim 7. Yeah, but what's missing in Claim 7? Suppose we say automatically complete means the purchaser is done with it, and we say initiate means it's the final step. If the court were to find, and I don't believe there's evidence in the record, that they had met the step of automatic completion without human involvement, there would still be the separate limitation of the metadata requirement. The current system that Amazon uses has metadata in the form of cookies to associate the customer with the transaction. But in the 1995 system, Amazon didn't have that metadata. It had something called the session ID, and the evidence at trial was that that was not metadata. Dr. Seamus testified that it wasn't. That's at A10216, and Dr. Alvisi never disputed the point. So there was simply no evidence offered to the jury that it had the required metadata limitation either. And then fundamentally, Amazon simply can't sidestep its burden under cases such as Enso Biochem to provide a detailed mapping, an analysis, a one-to-one mapping for Claim 7. A single question, whether an analysis of the 95 cart would meet the limitations of Claim 7, is all that Dr. Alvisi was asked. He said, I think it would. Then they moved on to Claim 8. Same thing. He was asked one question. Would it meet the requirements of Claim 8? Answer, yes. No analysis, no mapping, no explanation. Mr. Albert, my internal clock tells me you've used exactly 13 minutes. Thank you, Your Honor. So if you want to consider that you've got up to two minutes left and be ready to conclude. OK. I'd like to address written description. As the judge found, Amazon never addressed the portions of the specification in which written description support is found. And these portions of the spec had been identified by the judge herself, as well as by the inventor, Mr. Reed, at trial. And additionally, in a claim chart on the very issue of written description that was offered into evidence without objection. So Amazon's entire written description case came down to its expert, Dr. Alvisi. And as the court correctly found, Alvisi's testimony was conclusory. It was exactly the type of testimony under Cuito and cytologics that is insufficient to establish written description, lack of written description. And the analysis for written description, of course, has to be done from the point of view of one of skill in the art. So in the absence of any testimony from Dr. Alvisi to the jury as to how a person of skill in the art would interpret the spec and whether it would describe what is claimed in Claim 7, there was no basis on which written description invalidity could be found. And the district court got that right. But there was loads of testimony from Dr. Alvisi in which he said there are no steps. It's a very generic description. And he talks about completing the transaction automatically. And time and again, he says there's nothing there. Why isn't that substantial evidence? Because, Your Honor, he was directing for two reasons. One is that the bulk of the testimony that Your Honor is referring to related, again, to Claim 1. And we're here with regard to Claim 7, a very different claim in a couple of key respects. In Claim 1, you have an indication to initiate. In Claim 7, it's an indication to complete. And perhaps more importantly, in Claim 1, there's metadata that's transferred with the indication to initiate. While in Claim 7, there's a very different use of metadata in a different context. So Dr. Alvisi, as the district court found, never tied any written description testimony that he offered specifically to Claim 7. Validity, of course, has to be analyzed claim by claim. They can't simply say, well, 1 is analogous to 7. They did argue that in their briefs. And they based it on something that Dr. Seamus said. Dr. Seamus, of course, was testifying in the infringement context. He never said that the scope of the claims was identical. They clearly are not. And they were construed differently. So there was a complete absence of testimony from Amazon to meet its burden of proof on written description. Thank you, Mr. Albert. I think we've had a good time. Let me ask one more question. This is a jurisdictional question. Is there a final judgment here in the sense that I have difficulty in seeing that the district court entered a final judgment with respect to Claims 1, 3, and 5? The district court dismissed Claims 1, 3, and 5 as moot. And we have in our cross-appeal. Dismissed them as moot? Sorry, dismissed the challenge to 1, 3, and 5 as moot. And we have in our cross-appeal addressed that issue, Your Honor. I'm not understanding that. I don't see where there's a judgment with respect to Claims 1, 3, and 5. Well, in the Jamal opinion, there's a section in which Judge Stein did address Claims 1, 3, and 5 and found that because she was reversing the jury verdict on 7 through 9 that it was moot. Okay. We addressed it in the cross-appeal. I'd be happy if it would be helpful to the court to submit something subsequently. If we're interested in that, we'll ask you. Thank you, Mr. Albert. Mr. Hatton, some rebuttal? Sure. I mean, just on this anticipation issue. There's nothing in the claims that says the transaction is completed when a credit card is verified versus charged. That's a distinction that they're coming up with now. What about their metadata? Metadata, Dr. Alvisi testified that there's a session ID that she used to look up stored customer information. That meets the requirement of metadata according to the court's construction, which is information that she used to identify stored customer information as information to be used to complete the transaction. In the 1995 card? In the 1995 card. And, in fact, Dr. Alvisi also testified— Is there contrary testimony? No. Dr. Alvisi also testified that in 1996, still before their priority date, Amazon adopted cookies so that the session ID was transferred in a cookie identically to the way it's done today. So there's no distinction in the metadata. On this notion that there was other written description support provided for the specification other than the payment partner server section that Dr. Alvisi addressed, that is not true. That's nonsense. It's nowhere in the transcript. This claim chart that they're talking about was an exhibit to a summary judgment declaration that only got admitted because the declaration itself was used to impeach Mr. Reed during his testimony. Mr. Reed was barred at the pretrial conference from providing any testimony linking the claim elements to the written description because he was not identified as an expert, and Dr. Seamus was the designated expert on that topic. Accordance chose not to call him at trial. There was no expert testimony on written description and no identification of anything except this payment partner server, which they went through at length in their opening, in their direct, and in their closing. And Dr. Alvisi addressed all of it. Nothing further. Thank you, Mr. Haddon. We'll take the case under advisement.